IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**ESTATE OF ZOUHAIR EL HALABI**
**By Ferial Harbi, Personal Representative**

**and**

**ESTATE OF YESSRA HALABI**
**By Ferial Harbi, Personal Representative**

**and**

**SADICA ALLOUCHE**
**Individually on Her Own Behalf**

**and**

**HODA AMMAR**
**Individually on Her Own Behalf**

**and**

**RIMA BOUCHAAYA**
**Individually on Her Own Behalf**

**and**

**BILLAL EL HALABI**
**Individually on Her Own Behalf**

**and**

**MARWAN EL HALABI**
**Individually on His Own Behalf**

**and**

**MOHAMAD S. EL HALABI**
**Individually on His Own Behalf**

**and**

**FERIAL HARBI**
**Individually on Her Own Behalf**

and

**MOHAMMED FNEICH**
**Individually on His Own Behalf**

and

**ESTATE OF NAJEM HASSAN**
**By Noura Ibrahim, Personal Representative**

and

**KHALED HASSAN**
**Individually on His Own Behalf**

and

**KHODOR HASSAN**
**Individually on His Own Behalf**

and

**LAMIA HASSAN**
**Individually on Her Own Behalf**

and

**MANAL HASSAN**
**Individually on Her Own Behalf**

and

**MANJA HASSAN**
**Individually on Her Own Behalf**

and

**NOURA IBRAHIM**
**Individually on Her Own Behalf**

and

**RADWAN HASSAN**
**Individually on His Own Behalf**

and

**RANIA HASSAN**
**Individually on Her Own Behalf**

and

**SAADA HASSAN**
**Individually on Her Own Behalf**

and

**SABAH HASSAN**
**Individually on Her Own Behalf**

and

**SAWSAN HASSAN**
**Individually on Her Own Behalf**

and

**ESTATE OF SAMIRA GHADAR**
**By Hussein Makki, Personal Representative**

and

**ALI HASSAN MAKKI**
**Individually on His Own Behalf**

and

**ALI MUSTAPHA MAKKI**
**Individually on His Own Behalf**

and

**FATME MAKKI**
**Individually on Her Own Behalf**

and

**ESTATE OF HASSAN MAKKI**
**By Hussein Makki, Personal Representative**

and

**HUSSEIN MAKKI**
**Individually on His Own Behalf**

**and**

**LEILA MAKKI**
**Individually on Her Own Behalf**

**and**

**MAKIE MAKKI**
**Individually on Her Own Behalf**

**and**

**MALAKE MAKKI**
**Individually on Her Own Behalf**

**and**

**MARIAM MAKKI**
**Individually on Her Own Behalf**

**and**

**MIRNA MAKKI**
**Individually on Her Own Behalf**

**and**

**ELIE SALEMEH**
**Individually on His Own Behalf**

**and**

**RIMA ABOU SHAAR**
**Individually on Her Own Behalf**

**and**

**IBRAHIM YAKZAN**
**Individually on His Own Behalf**

**and**

**NOUHAD YAKZAN**
**Individually on His Own Behalf**

**and**

**HASSANA YAKZAN**
**Individually on Her Own Behalf**

**and**

**KHODOR YAKZAN**
**Individually on His Own Behalf**

**and**

**HUSSAM YAKZAN**
**Individually on His Own Behalf**

**and**

**IMAD YAKZAN**
**Individually on His Own Behalf**

                           **Plaintiffs,**

        **v.**                                     **Civil No.** _____

**ISLAMIC REPUBLIC OF IRAN**
**Ministry of Foreign Affairs**
**Khomeini Avenue**
**United Nations Street**
**Tehran, Iran**

**and**

**IRANIAN MINISTRY OF INFORMATION**
**AND SECURITY**
**Pasdaran Avenue**
**Golestan Yekom**
**Tehran, Iran**

                        **Defendants**

5

## COMPLAINT

Plaintiffs, by and through undersigned counsel, bring this action seeking damages arising out of the terrorist attacks against the U.S. Embassy in Beirut, Lebanon, on April 18, 1983, and the U.S. Embassy Annex in Beirut, Lebanon, on September 20, 1984. Plaintiffs are legally entitled to assert a claim under the District of Columbia Wrongful Death Act, the District of Columbia Survival Act, and the Foreign Sovereign Immunities Act (28 U.S.C. §§ 1602 et seq.), as amended by §1083 of the Defense Appropriations Act of 2008, H.R. 4986, Public Law 110-181.

## INTRODUCTION

(1)     This Complaint alleges that Defendants, the Islamic Republic of Iran and its agency and instrumentality the Ministry of Information and Security (MOIS), were responsible for the terrorist bombings of the U.S. Embassy in Beirut, Lebanon, on April 18, 1983, and the U.S. Embassy Annex in Beirut, Lebanon, on September 20, 1984.

(2)     This case arises out of the same acts and/or incidents as those in several separate cases in which this Court has held Defendants liable for injuries sustained by victims of the bombing of the U.S. Embassy Annex in Beirut, Lebanon on September 20, 1984. *See Wagner v. Islamic Republic of Iran*, 172 F. Supp. 2d 128 (2001) (Jackson, J.) *Welch v. Islamic Republic of Iran*, 2007 WL 7688043 (2007) (Kollar-Kotelly, C.) (1984 attack), *Brewer v. Islamic Republic of Iran*, 664 F. Supp. 2d 43 (2009) (Huvelle, E.) (1984 attack), *Estate of John Doe v. Islamic Republic of Iran*, 808 F. Supp. 2d 1(2011) (Bates, J.) (1983 and 1984 attacks), *Maalouf v. Islamic Republic of Iran*, 2020 WL 805726 (Bates, J.), and *Estate of Rene Bathiard v. Islamic Republic of Iran*, 2019 WL 5790356, (Cooper, C.) (1983 and 1984 attacks). In all of these cases, Defendants were

held liable for acts of state sponsored terrorism, with judgments entered in favor of Plaintiffs accordingly.

(3)     Plaintiffs in this Complaint are foreign nationals, or the estates of foreign nationals, who were employed by the U.S. government at the time of the 1983 and 1984 bombings and suffered injuries or death, and their immediate family members.

(4)     Plaintiffs have not participated in any previous lawsuits stemming from these attacks.

## JURISDICTION AND VENUE

(5)     This Court exercises subject matter jurisdiction in accordance with the provisions of 28 U.S.C. §§ 1330(a), 1331, 1332(a)(2), and 1605A, which create subject matter and personal jurisdiction for civil actions for wrongful death and personal injury against state sponsors of terrorism and their officials, employees, and agents.

(6)     The Court exercises *in personam* jurisdiction over the parties designated as Defendants in accordance with the provisions of 28 U.S.C. §1605A.

(7)     Venue in this Court is proper in accordance with the provisions of 28 U.S.C. § 1391(f)(4), which provides in pertinent part that a civil action against a foreign state may be brought in the U.S. District Court for the District of Columbia.

(8)     28 U.S.C. § 1605A(c) provides a federal private right of action against a foreign state that is or was a state sponsor of terrorism, and also against any official, employee or agent of that foreign state while acting within the scope of his or her office, employment or agency, for wrongful death, personal injury and related torts caused by an act of torture or extrajudicial killing, or the provision of material support and resources for such acts. This cause of action is available to U.S. nationals and foreign national employees of the U.S. government who were killed or injured while acting within the scope of their employment.

(9)      Wherever the common or statutory law of a Plaintiff's residence contains rights or makes further damages available that are not duplicative of the recovery afforded under 28 U.S.C. § 1605A(c), Plaintiffs have causes of action under the common or statutory law of the U.S. state or foreign country where they were domiciled at the time of the attack.

(10)     The passage of time does not constitute a bar to Plaintiffs' actions seeking a judicial remedy for their injuries. For decades, Iran has made the conscious and deliberate choice to flout U.S. law and the jurisdiction of the U.S. courts, in order to evade its responsibility for the intentional murder of scores of innocent victims, and injury to hundreds more, in the Beirut attacks. The United States Court of Appeals for the D.C. Circuit has definitively held that the statute of limitations in 28 U.S.C. §1605A is not jurisdictional and is waived if not timely asserted.

## THE PARTIES

### Plaintiffs

(1)      Zouhair El Halabi, now deceased, was, at the time of the acts alleged herein, a Lebanese citizen domiciled in Lebanon and employed by the U.S. Government at the U.S. Embassy in Beirut. Zouhair El Halabi was injured by an act of "torture" as defined in 28 U.S.C. § 1605A(a) and § 1605A(h)(7) and the Torture Victims Protection Act, 28 U.S.C. §1350, in connection with the 1984 Beirut Embassy bombings. At the time of the attacks, Zouhair El Halabi was acting within the scope of his employment at the Embassy. Ferial Harbi, Personal Representative of the Estate of Zouhair El Halabi, brings claims for assault, battery, pain and suffering, loss of solatium, and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(2)      Yessra Halabi, now deceased, was the mother of Zouhair El Halabi. Ferial Harbi, Personal Representative of the Estate of Yessra Halabi, brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(3)      Sadica Allouche is the sister of Zouhair El Halabi. Sadica Allouche brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(4)      Hoda Ammar is the sister of Zouhair El Halabi. Hoda Ammar brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(5)      Rima Bouchaaya is the sister of Zouhair El Halabi. Rima Bouchaaya brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(6)      Billal El Halabi is the sister of Zouhair El Halabi. Billal El Halabi brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(7)      Marwan El Halabi is the brother of Zouhair El Halabi. Marwan El Halabi brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(8)      Mohamad El Halabi is the brother of Zouhair El Halabi. Mohamad El Halabi brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(9)    Ferial Harbi is the sister of Zouhair El Halabi. Marwan El Halabi brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(10)    Mohammad Fneich was at the time of the acts alleged herein a Lebanese citizen domiciled in Lebanon and employed by the U.S. Government at the U.S. Embassy in Beirut. Mohammed Fneich was injured by an act of "torture" as defined in 28 U.S.C. § 1605A(a) and § 1605A(h)(7) and the Torture Victims Protection Act, 28 U.S.C. §1350, in connection with the 1983 and 1984 Beirut Embassy bombings. At the time of the attacks, Mohammed Fneich was acting within the scope of his employment at the Embassy. Mohammed Fneich brings claims for assault, battery, pain and suffering, loss of solatium, and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(11)    Najem Hassan, now deceased, was, at the time of the acts alleged herein, a Lebanese citizen domiciled in Lebanon and employed by the U.S. Government at the U.S. Embassy in Beirut. Najem Hassan was injured by an act of "torture" as defined in 28 U.S.C. § 1605A(a) and § 1605A(h)(7) and the Torture Victims Protection Act, 28 U.S.C. §1350, in connection with the 1983 Beirut Embassy bombing. At the time of the attack, Najem Hassan was acting within the scope of his employment at the Embassy. Noura Ibrahim, Personal Representative of the Estate of Najem Hassan, brings claims for assault, battery, pain and suffering, loss of solatium, and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(12)    Noura Ibrahim is the widow of Najem Hassan. She brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(13)    Khaled Hassan is the son of Najem Hassan. He brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(14)    Khodor Hassan is the son of Najem Hassan. He brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(15)    Lamia Hassan is the daughter of Najem Hassan. She brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(16)    Manal Hassan is the daughter of Najem Hassan. She brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(17)    Manja Hassan is the daughter of Najem Hassan. She brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(18)    Mona Hassan is the daughter of Najem Hassan. She brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(19)    Radwan Hassan is the son of Najem Hassan. He brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(20)    Rania Hassan is the daughter of Najem Hassan. She brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(21)    Saada Hassan is the daughter of Najem Hassan. She brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(22)    Sabah Hassan is the daughter of Najem Hassan. She brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(23)    Sawsan Hassan is the daughter of Najem Hassan. She brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(24)    Hassan Makki, now deceased, was, at the time of the acts alleged herein, a Lebanese citizen domiciled in Lebanon and employed by the U.S. Government at the U.S. Embassy in Beirut. Hassan Makki was injured by an act of "torture" as defined in 28 U.S.C. § 1605A(a) and § 1605A(h)(7) and the Torture Victims Protection Act, 28 U.S.C. §1350, in connection with the 1983 and 1984 Beirut Embassy bombings. At the time of the attacks, Hassan Makki was acting within the scope of his employment at the Embassy. Hussein Makki, Personal Representative of the Estate of Hassan Makki, brings claims for assault, battery, pain and suffering, loss of

solatium, and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(25)    Hussein Makki is the son of Hassan Makki. Hussein Makki brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(26)    Ali Hassan Makki is the son of Hassan Makki. Ali Hasssan Makki brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(27)    Ali Mustapha Makki is the brother of Hassan Makki. Ali Mustapha Makki brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(28)    Fatme Makki is the sister of Hassan Makki. Fatme Makki brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(29)    Leila Makki is the sister of Hassan Makki. Leila Makki brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(30)    Makie Makki is the sister of Hassan Makki. Makie Makki brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(31)    Malake Makki is the sister of Hassan Makki. Malake Makki brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(32)    Mariam Makki is the sister of Hassan Makki. Mariam Makki brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(33)    Mirna Makki is the daughter of Hassan Makki. Mirna Makki brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(34)    Samira Ghadar now deceased, was the wife of Hassan Makki. Hussein Makki, Personal Representative of the Estate of Samira Ghadar, brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(35)    Elie Salemeh was at the time of the acts alleged herein a Lebanese citizen domiciled in Lebanon and employed by the U.S. Government at the U.S. Embassy in Beirut. Elie Salemeh was injured by an act of "torture" as defined in 28 U.S.C. § 1605A(a) and § 1605A(h)(7) and the Torture Victims Protection Act, 28 U.S.C. §1350, in connection with the 1984 Beirut Embassy bombings. At the time of the attacks, Elie Salemeh was acting within the scope of his employment at the Embassy. Elie Salemeh brings claims for assault, battery, pain and suffering, loss of solatium, and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(36)    Rima Abou Shaar is the wife of Mahmoud Yakzan[1], who was at the time of the acts alleged herein, a Lebanese citizen domiciled in Lebanon and employed by the U.S. Government at the U.S. Embassy in Beirut. Mahmoud Yakzan was injured by an act of "torture" as defined in

---

[1] Mahmoud Yakzan is not a plaintiff in this case. He is a plaintiff in *Mohammed Abdallah, et al., v. Islamic Republic of Iran, et al.*, 21-cv-2889 (CRC) which is currently pending before this Court.

28 U.S.C. § 1605A(a) and § 1605A(h)(7) and the Torture Victims Protection Act, 28 U.S.C. §1350, in connection with the 1984 Beirut Embassy bombing. At the time of the attack, Mahmoud Yakzan was acting within the scope of his employment at the Embassy. Rima Abou Shaar brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(37)    Hassana Yakzan is the daughter of Mahmoud Yakzan. Hassana Yakzan brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(38)    Hussam Yakzan is the son of Mahmoud Yakzan. Hussam Yakzan brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(39)    Ibrahim Yakzan is the brother of Mahmoud Yakzan. Ibrahim Yakzan brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(40)    Imad Yakzan is the brother of Mahmoud Yakzan. Imad Yakzan brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(41)    Khodor Yakzan is the son of Mahmoud Yakzan. Khodor Yakzan brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(42)    Nouhad Yakzan is the brother of Mahmoud Yakzan. Nouhad Yakzan brings claims for loss of consortium and intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

15

**Defendants**

(43)    Defendant the Islamic Republic of Iran is a foreign sovereign state. Iran is now and has

been designated a state sponsor of terrorism pursuant to Section 6(j) of the Export

Administration Act of 1979 (50 U.S.C.A. § 2405(j)) and Section 620A of the Foreign Assistance

Act of 1961 (22 § U.S.C. 2371) since January 19, 1984. Iran was designated a state sponsor of

terrorism as a result, *inter alia*, of the 1983 bombing of the U.S. Embassy in Beirut, Lebanon.

(44)    Defendant the Iranian Ministry of Information and Security (MOIS) functions as the

Iranian Intelligence Service and, in this capacity, as an agent of Iran.

(45)    Pursuant to 28 U.S.C. § 1605A(c), Defendant Iran is vicariously liable for the acts of its

officers, employees, or agents, including those of MOIS.

## FACTUAL ALLEGATIONS

### The April 18, 1983 Attack on the U.S. Embassy in Beirut, Lebanon

(46)    Hezbollah[2] is an organization of Lebanese Muslims who are adherents of the Shia or

Shiite faction of Islam. It represents itself as "an Islamic freedom fighting movement" which

views any part of the Near East under the control of the State of Israel as "occupied land". It

advocates the expulsion of the United States from the Near East and is committed to violent

action to that end and to the termination of the existence of the State of Israel.

(47)    At all times relevant to this action, Hezbollah was being given extensive support by these

Defendants which permitted it to carry out a wide-ranging program of terrorism against the

United States and the State of Israel and a social welfare program designed to garner political

support amongst the Shiite population of Lebanon.

---

[2] The spelling of this word differs slightly in various publications. It is believed that this spelling is the most common. The organization also refers to itself in some publications as the "Party of God".

(48)    In 1983 Hezbollah was under the complete operational control of the Defendants, through Iranian Revolutionary Guard units within Lebanon. The Shia or Shiite Community in Lebanon had been economically depressed for an extended period of time prior to the date of the occurrence and was further disadvantaged by a level of education far below that of other major groups within Lebanon. The provision of extensive economic support by the Defendants to Hezbollah was necessary for the organization to carry out the terrorist attack of April 18, 1983 at the U.S. Embassy in Beirut, Lebanon.

(49)    On April 18, 1983, an unidentified male driver crashed a vehicle laden with hundreds of pounds of explosives into the main entrance of the U.S. Embassy in Beirut. Upon crashing, the vehicle exploded with tremendous force, causing seven floors in the Embassy to collapse.

(50)    Large portions of the Embassy building were completely destroyed by the blast, while others were severely damaged. Sixty-three people were killed as a result of the blast and more than one hundred people were injured.

(51)    This Court has in several earlier cases found by clear and convincing evidence that Defendants, the Islamic Republic of Iran and the Iranian Ministry of Information and Security (MOIS), were responsible for the attack above described. See *Dammarell v. Islamic Republic of Iran,* 404 F. Supp. 2d 261 (2005) (Bates, J.) (1983 attack); *Estate of John Doe v. Islamic Republic of Iran,* 808 F. Supp. 2d 1(2011) (Bates, J.) (1983 and 1984 attacks), and *Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 128 (2005) (Bates, J.) (1983 attack).

(52)    The attack on April 18, 1983 was funded by the Defendants, the Islamic Republic of Iran and MOIS, acting through its satellite terrorist organization, Hezbollah.

(53)    The actions of the agents of the Defendants as above set forth constituted acts of torture, extrajudicial killing and the provision of material resources for these acts as defined in 18 U.S.C. § 2339A.

(54)    The formation of Hezbollah and its emergence as a major terrorist organization was the product of direct intervention by Iranian operatives, including the Iranian Revolutionary Guards, Defendant MOIS and Ali Akbar Mohtashemi, acting as Interior Minister of Defendant the Islamic Republic of Iran, and as the Iranian Ambassador to Syria. The above referred-to activities of Hezbollah were financed, technologically supported and commanded by Iranian military/intelligence operatives.

### The September 20, 1984 Attack on the U.S. Embassy Annex

(55)    After the 1983 attack on the U.S. Embassy, the government was forced to relocate its embassy operations to a new building in East Beirut, which was referred to by Embassy staff as the "Embassy Annex."

(56)    Shortly before noon on Thursday, September 20, 1984, a station wagon loaded with some 1500 kilograms of explosives was driven onto the embassy compound at high speed.  The vehicle exploded in the vicinity of a concrete cistern filled with water at the front of the Embassy.  The car bomb demolished the embassy building.  At least eleven people were killed, the majority of which were Lebanese nationals employed by the U.S. government, and over fifty other people were wounded, including the Ambassador.

(57)    The evidence connecting the bombing to Iran and MOIS included, among other things, satellite photos of an exact replica of the obstacle-strewn approach to the U.S. Embassy, constructed as a training device for the suicide bomber, situated at the Sheik Abdullah Barracks in the Beka'a Valley of Lebanon.  Iranian Revolutionary Guards were known to be quartered at

the barracks, where members of Hezbollah were also quartered and trained.  These barracks were one of the places of confinement for American hostages seized by Hezbollah.

(58)    This Court has in several earlier cases found by clear and convincing evidence that Defendants, the Islamic Republic of Iran and MOIS, were responsible for the attack above described. See *Wagner v. Islamic Republic of Iran*, 172 F. Supp. 2d 128 (D.D.C. 2001) (Jackson, J.), *Welch v. Islamic Republic of Iran*, 2007 WL 7688043 (2007) (Kollar-Kotelly, C.) *Brewer v. Islamic Republic of Iran*, 664 F. Supp. 2d 43 (2009) (Huvelle, E.), *Estate of John Doe v. Islamic Republic of Iran,* 808 F. Supp. 2d 1(2011) (Bates, J.) (1983 and 1984 attacks).

(59)    The attack on September 20, 1984 was funded by the Defendants, the Islamic Republic of Iran and MOIS, acting through its satellite terrorist organization, Hezbollah.

(60)    The actions of the agents of the Defendants as above set forth constituted acts of torture, extrajudicial killing and the provision of material resources for these acts as defined in 18 U.S.C. § 2339A.

## COUNT I
## 28  U.S.C. 1605A(c), PRIVATE RIGHT OF ACTION

(61)    Plaintiffs Estate of Zouhair El Halabi, Mohammad Fneich, Estate of Najem Hassan, Estate of Hassan Makki, and Elie Salemeh repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

(62)    Defendant Iran was and is a state sponsor of terrorism as described in 28 U.S.C. § 1605A(a)(2)(A)(i).  Defendant and its agents were acting within the scope of their office, employment, or agency in committing the acts alleged herein, including planning and carrying out the terrorist attacks on the U.S. Embassy in Beirut, Lebanon on April 18, 1983 and the U.S. Embassy Annex in Beirut, Lebanon, on September 20, 1984.

(63)     As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of Hezbollah members, whose acts were funded and directed by Defendant Iran through its agent MOIS, Plaintiffs suffered, *inter alia*, physical pain and suffering, mental anguish, emotional pain and suffering, solatium and/or economic losses resulting from Defendants' acts.

(64)     Accordingly, as a result of Defendants' actions, Plaintiffs seek compensatory damages.

(65)     WHEREFORE, Plaintiffs demand that judgment be entered, jointly and severally, against Defendants in such amounts as are permitted by law and in accordance with this Court's prior determinations of awards and judgments on behalf of similarly situated Plaintiffs, both for their compensatory, solatium and punitive damages, and otherwise as permitted by this Court. As to punitive damages, Defendant Iran must be sent a message that its past and continued sponsorship of terror is unconscionable and will not be tolerated by this Court, which should award each Plaintiff the amount of TWENTY MILLION DOLLARS ($20,000,000.00) for such damages, in addition to an award of all other allowable damages, interest, attorney fees, and assessment of costs and expenses, and the entry of Judgment, against the Defendants.

## COUNT II
## ASSAULT AND BATTERY and PAIN AND SUFFERING

(66)     Plaintiffs Estate of Zouhair El Halabi, Mohammad Fneich, Estate of Najem Hassan, Estate of Hassan Makki, and Elie Salemeh repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

(67)     As a direct consequence of the willful, wrongful, intentional and reckless acts of Defendants, Plaintiffs suffered severe and permanent injuries, including severe lacerations which have resulted in permanent and severe post-traumatic stress disorder. The explosion was intended to cause harmful contact with the Plaintiffs and put them in reasonable apprehension of

imminent battery. These injuries were caused by a willful and deliberate act of persons who had been materially assisted by Defendants for the purpose of inflicting physical injuries upon Plaintiffs and others. Those persons were at all times acting with the material support of the Defendants and with the concurrence of Defendants, the Islamic Republic of Iran and MOIS.

(68)    As a direct consequence of the willful, wrongful, intentional and reckless acts of Defendants, the Plaintiffs have been required to undergo extensive medical treatment, nursing care, and other treatment, for which they have been required to expend funds and have endured great pain and suffering.

(69)    WHEREFORE, Plaintiffs each demand judgment be entered, jointly and severally, against the Defendants, the Islamic Republic of Iran and MOIS, in the amount of TWENTY MILLION DOLLARS ($20,000,000.00), besides costs.

## COUNT III
## FOR LOSS OF SOLATIUM AND/OR CONSORTIUM

(70)    All Plaintiffs repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

(71)    As a direct consequence of the willful, wrongful, intentional and reckless acts of Defendants, the Plaintiffs and their family members suffered extreme mental anguish, emotional pain and suffering, and the loss of the society and companionship of the victims.

(72)    Accordingly, the Plaintiffs and their family members bring claims for loss of solatium and/or loss of consortium against Defendants pursuant to 28 U.S.C. § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(73)    WHEREFORE, Plaintiffs each demand judgment be entered, jointly and severally, against the Defendants, the Islamic Republic of Iran and MOIS, in the amount of FIFTY MILLION DOLLARS ($50,000,000.00), besides costs.

## COUNT IV
## FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(74)    All Plaintiffs repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

(75)    Members of Hezbollah, as directed by Defendants, willfully, violently, and forcefully caused an explosive device to detonate at the U.S. Embassy in Beirut, Lebanon on April 18, 1983, and at the U.S. Embassy Annex in Beirut, Lebanon, on September 20, 1984.

(76)    The acts of detonating an explosive charge at the U.S. Embassy on April 18, 1983 and at the U.S. Embassy Annex on September 20, 1984, constituted extreme and outrageous conduct on the part of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent the MOIS.

(77)    As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hezbollah members, whose acts were funded and directed by the Defendants, Plaintiffs suffered severe emotional distress, entitling each to compensatory damages.

(78)    Each Plaintiff may assert a cause of action for intentional infliction of emotional distress against Defendants in connection with the willful, wrongful, intentional, and reckless actions of Hezbollah actions. Such cause of action may be asserted pursuant to 28 U.S.C. § 1605A(c), or, in the alternative, the laws of the District of Columbia or Lebanon.

(79)    WHEREFORE, Plaintiffs each demand judgment against the Defendants, the Islamic Republic of Iran and MOIS, in the amount of FIFTY MILLION DOLLARS ($50,000,000.00), besides costs.

## COUNT V
## FOR PUNITIVE DAMAGES

(80)    All Plaintiffs repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

(81)    The actions described above were carried out with the material support, knowledge, and assistance of the Defendants, the Islamic Republic of Iran and MOIS. The actions were malicious, willful, unlawful, and in wanton disregard of life and the standards of law that govern the actions of civilized nations.

(82)    The personal injuries, loss of life, and resulting damages, as described above, were intended as a result by each Defendant. The actions of those who carried out the attack described were within the scope of their agency on behalf of the Defendants.

(83)    Under federal and/or state and foreign law, the Plaintiffs, and each of them, are entitled to an award of punitive damages to be assessed and awarded against the Defendant for its heinous, reprehensible, and unforgiving conduct in perpetrating unrelenting terror upon the United States of America, her citizens, and the Plaintiffs, and each of them. The purposes of punitive damages is to punish, for retribution and to deter further acts of terror by the Defendant and other terror organizations and those who provide material support for the sponsorship of terror. This allows, and under the circumstances requires, a message to be sent by this Court to the Islamic Republic of Iran that its' past and ongoing sponsorship of terror will not be countenanced by this Court, or by the United States of America.

(84)    WHEREFORE, Plaintiffs pray that judgment be entered, jointly and severally, against the Islamic Republic of Iran and MOIS, on behalf of each decedent and each surviving Plaintiff, in the amount of THREE HUNDRED MILLION DOLLARS ($300,000,000.00), to be shared

23

among them in direct proportion to the other damages awarded to the Plaintiffs, and as the interests of justice may allow.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that the Court grant Plaintiffs' request for judgment against Defendants on Counts I through IV and award Plaintiffs:

    a.  Compensatory damages against Defendants the Islamic Republic of Iran and Iranian Ministry of Information and Security in the amounts set forth in Counts I-V;

    b.  Punitive Damages against Defendants the Islamic Republic of Iran and Iranian Ministry of Information and Security in the amount set forth in Count V;

    c.  Pre-judgment interest as allowed by law;

    d.  Reasonable costs and expenses;

    e.  An award of reasonable attorneys' fees; and

    f.  Such other and further relief which the Court may determine to be just and equitable under the circumstances.

**Date: October 19, 2022**

**Respectfully submitted,**

**FAY LAW GROUP, PA**

Amanda Fox Perry (Bar No. 230024)
6205 Executive Boulevard
Rockville, MD 20852
(202) 589-1300
Amanda.Perry@faylawgroup.com

24

Caragh Fay (Bar No. 16955)
6205 Executive Boulevard
Rockville, MD 20852
(202) 589-1300
Caragh.Fay@faylawgroup.com

*Attorneys for Plaintiffs*