UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ESTATE OF ZOUHAIR EL HALABI**, *et al.*,<br><br>                Plaintiffs,<br><br>       v.<br><br>**THE ISLAMIC REPUBLIC OF IRAN**, *et al.*,<br><br>                Defendants. | Case No. 22-cv-3190 (CRC) |

### MEMORANDUM OPINION

The twenty-eight plaintiffs in this case are the family members and estates of three individuals who were injured during terrorist attacks perpetrated at the U.S. Embassy in Beirut, Lebanon, in the 1980s.[1]  They bring claims against the Islamic Republic of Iran ("Iran") and Iranian Ministry of Information and Security ("MOIS"), alleging that they funded and supported the designated terrorist group Hezbollah, which in turn carried out the attacks.  As is common in these cases, Iran and MOIS have failed to appear.  But under the Foreign Sovereign Immunities Act ("FSIA"), the defendants are still presumptively immune from suit unless the plaintiffs can show that an exception to immunity applies.  See 28 U.S.C. § 1604.  Relevant here, the FSIA abrogates foreign sovereign immunity for suits seeking money damages for personal injury or death resulting from the defendant country's "provision of material support or resources" for "an

---

[1] This case began with 57 plaintiffs, 29 of whom have since been severed from the case and now proceed in a related action, Fneich v. Islamic Republic of Iran, 24-cv-1843.  The plaintiffs in this action are as follows: Estate of Zouhair El Halabi, Estate of Yessra Halabi, Sadica Allouche, Hoda Ammar, Rima Bouchaaya, Billal El Halabi, Marwan El Halabi, Mohamad El Halabi, Ferial Harbi, Estate of Najem Hassan, Estate of Noura Ibrahim, Khaled Hassan, Khodor Hassan, Lamia Hassan, Manal Hassan, Manja Hassan, Mona Hassan, Radwan Hassan, Rania Hassan, Saada Hassan, Sabah Hassan, Sawsan Hassan, Estate of Hassan Makki, Hussein Makki, Ali Hassan Makki, Mirna Makki, Zeina Makki, and the Estate of Samira Ghadar.

act of torture, extrajudicial killing, aircraft sabotage, [or] hostage taking[.]" 28 U.S.C. § 1605A(a)(1).  Invoking this exception, the plaintiffs now move for default judgment.

The Court finds, as it has in the past, that Iran and MOIS are liable for the attacks due to their provision of material support to Hezbollah.  The Court further finds that the FSIA's requirements for personal and subject matter jurisdiction are met, and that the plaintiffs have submitted satisfactory evidence to support a claim to relief.  The Court will therefore grant the plaintiffs' motion for default judgment and appoint special masters to recommend appropriate damages awards.

I. **Background**

Given the default posture of these proceedings, the Court draws the following background from the allegations in the complaint, the plaintiffs' supporting affidavits, and facts in the record of related cases that arise from these attacks and involve the same defendants, of which the Court takes judicial notice.

On April 18, 1983, "an unidentified male driver crashed a vehicle laden with hundreds of pounds of explosives into the main entrance of the United States Embassy in Beirut," killing 63 people and injuring more than 100 others.  Corr. Am. Compl. ("CAC"), ECF No. 37-1, ¶¶ 74–75; see also Est. of Doe v. Islamic Republic of Iran, 808 F. Supp. 2d 1, 7–8 (D.D.C. 2011).  Plaintiffs Najem Hassan and Hassan Makki were working at the embassy when the blast occurred, Najem as a government contractor and Hassan as an embassy employee.  See Mot. Default J. Ex. 5 at 27 (Estate of Hassan Makki Affidavit), 56 (Estate of Najem Hassan Affidavit).  The two suffered physical injuries, "extraordinary grief, mental anguish," and "severe emotional stress" as a result of the attack.  Id.

Because the embassy building was severely damaged, embassy operations were temporarily transferred to another building—the Embassy Annex. CAC ¶¶ 74–75, 80; Est. of Doe, 808 F. Supp. 2d at 7. Shortly thereafter, on September 20, 1984, another vehicle loaded with explosives detonated at the Embassy Annex, killing at least eleven people and wounding at least fifty more. See CAC ¶ 81; see also Wagner v. Islamic Republic of Iran, 172 F. Supp. 2d 128, 132 (D.D.C.2001). Hassan Makki was still employed at the embassy and was injured again in this second attack. See Mot. Default J. Ex. 5 at 27. Plaintiff Zouhair El Halabi, who also remained employed at the embassy, "sustained physical injuries" due to the blast and "suffered the pain inflicted by [his] injuries until his death." Id. at 81 (Estate of Zouhair El Halabai Affidavit). These attacks affected not only those directly involved but also the victims' family members. As alleged in the complaint and attested to in supporting affidavits, the families of these victims experienced significant emotional distress over their loved one's injuries. See CAC ¶¶ 2–9, 31–42, 44–45, 52–54; see also Mot. Default J. Ex. 5.

The plaintiffs brought suit in October 2022, asserting that Iran and MOIS were responsible for the attacks because they provided training and funding to Hezbollah. See CAC ¶¶ 72–73, 77–79, 82–84. The plaintiffs served the defendants through diplomatic channels in May 2023, ECF No. 17, and after five months without a response, they filed an affidavit in support of default, ECF No. 19. The Clerk of the Court entered default against the defendants and the plaintiffs subsequently moved for a default judgment as to the defendants' liability under the FSIA. See ECF Nos. 20–21.

Several other courts in this district have already found both that Hezbollah was responsible for these specific attacks and that the defendants are liable due to their provision of material support to Hezbollah. See Abdallah v. Islamic Republic of Iran, No. 21-CV-2889

(CRC), 2023 WL 10511379, at *1 (D.D.C. July 19, 2023) (collecting cases regarding the April 1983 bombing); Brewer v. Islamic Republic of Iran, 664 F. Supp. 2d 43, 54 (D.D.C. 2009) (finding same for the September 1984 bombing (citing Wagner, 172 F. Supp. 2d at 134)). Federal Rule of Evidence 201(b) permits courts to take judicial notice of facts "not subject to reasonable dispute" that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Under this rule, a court "may take judicial notice of related proceedings and records in cases before the same court." Brewer, 664 F. Supp. 2d at 47 (quoting Salazar v. Islamic Republic of Iran, 370 F. Supp. 2d 105, 109 n.6 (D.D.C. 2005)). "Because of the multiplicity of FSIA-related litigation in this jurisdiction, Courts in this District have thus frequently taken judicial notice of earlier, related proceedings." Bathiard v. Islamic Republic of Iran, No. 16-CV-1549 (CRC), 2019 WL 3412983, at *3 (D.D.C. July 29, 2019) (collecting cases taking judicial notice of prior cases involving the same attacks). The Court will do the same here.

## II. Legal Standards

Under the FSIA, a plaintiff may obtain a default judgment when the defendant fails to enter an appearance. 28 U.S.C. § 1608(e); see also Fed. R. Civ. P. 55(b)(2). "Entry of a default judgment is not automatic." Bathiard, 2019 WL 3412983, at *2 (quotation omitted). First, the Court must consider whether it has personal jurisdiction over the defendants, Mwani v. bin Laden, 417 F.3d 1, 6–7 (D.C. Cir. 2005), and whether it has subject matter jurisdiction over the action, James Madison Ltd. by Hecht v. Ludwig, 82 F.3d 1085, 1092 (D.C. Cir. 1996). See Bathiard, 2019 WL 3412983, at *2. Even then, plaintiffs must establish their right to relief "by evidence satisfactory to the court." 28 U.S.C. § 1608(e). Thus, rather than accept unsupported allegations as true, the Court must examine the plaintiffs' allegations and any proof provided to

ensure they have carried their burden.  See, e.g., Bluth v. Islamic Republic of Iran, 203 F. Supp. 3d 1, 17 (D.D.C. 2016).  When ruling on a motion for default judgment, a court may rely upon the plaintiffs' "uncontroverted factual allegations, which are supported by . . . documentary and affidavit evidence."  Valore v. Islamic Republic of Iran, 700 F. Supp. 2d 52, 59 (D.D.C. 2010).

### III. Analysis

The Court finds all three requirements for entry of a default judgment—subject matter jurisdiction, personal jurisdiction, and satisfactory evidence—satisfied here.

### A. Personal Jurisdiction

The FSIA provides for personal jurisdiction where service has been properly made under 28 U.S.C. § 1608.  Republic of Sudan v. Harrison, 587 U.S. 1, 4 (2019).  For service on a "foreign state or political subdivision," § 1608 permits service by four methods, in descending order of preference:

> (1) special arrangement for service between the plaintiff and the foreign state,
>
> (2) in accordance with an applicable international convention on service of judicial documents, or, if the first two options are not applicable,
>
> (3) by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or, if service cannot be made under the third option,
>
> (4) by requesting the Clerk of the Court to send the aforementioned package to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

Braun v. Islamic Republic of Iran, 228 F. Supp. 3d 64, 77–78 (D.D.C. 2017) (quoting 28 U.S.C. § 1608(a)).  "No special arrangement exists between Plaintiffs and Iran, and no applicable international convention on service governs here."  Cohen v. Islamic Republic of Iran, 238 F.

5

Supp. 3d 71, 82 (D.D.C. 2017) (Cooper, J.).  The plaintiffs therefore attempted to serve the heads of the Iranian Ministry of Foreign Affairs and MOIS by sending a copy of the summons and the complaint by certified mail.  See ECF No. 5–7.  After this method proved unsuccessful, see ECF No. 12, the plaintiffs duly served the defendants through diplomatic channels pursuant to 28 U.S.C. § 1608(a)(4), as confirmed by a letter from the U.S. State Department filed with the Court.  See ECF No. 17.  The Court therefore finds that service was properly effectuated, and that it may exercise personal jurisdiction over Iran and MOIS.

  B. Subject Matter Jurisdiction & Liability

  The FSIA is "the sole basis for obtaining jurisdiction over a foreign state in our courts." Nemariam v. Federal Democratic Republic of Ethiopia, 491 F.3d 470, 474 (D.C. Cir. 2007). Under the FSIA a foreign sovereign is presumptively immune from suit unless an exception applies.  See 28 U.S.C. § 1604.  Relevant here, the FSIA abrogates a foreign sovereign's immunity where (1) "money damages are sought" (2) "against a foreign state for" (3) "personal injury or death that" (4) "was caused" (5) "by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act."  28 U.S.C. § 1605A(a)(1); see Pennington v. Islamic Republic of Iran, No. 19-CV-796 (JEB), 2021 WL 2592910, at *2 (D.D.C. June 24, 2021).  The requirements of this exception are easily met here.  The plaintiffs seek money damages against Iran for personal injuries resulting from the 1983 and 1984 Beirut embassy bombings.  And because "Iran's complicity in the embassy bombing is not subject to reasonable dispute[,] the Court has no trouble taking as true the factual findings and legal conclusions in decision like Dammarell [v. Islamic Republic of Iran, 404 F. Supp. 2d 261 (D.D.C. 2005),] and Estate of Doe" finding that the 1983 and 1984 bombings were acts of "extrajudicial killing," for which Iran and MOIS provided material support.  Bathiard,

2019 WL 3412983, at *4; see Est. of Doe, 808 F. Supp. 2d at 14–15. Iran and MOIS therefore lack immunity from these claims.

The FSIA imposes two additional requirements to establish subject matter jurisdiction. First, the defendant foreign state must have been designated as a "state sponsor of terrorism" "at the time of the act" or "as a result of such act" and "remain[ ] so designated when the claim is filed." 28 U.S.C. § 1605A(a)(2)(A)(i)(I). And second, the claimant or victim must at the time of the act be a U.S. national, member of the U.S. armed forces, or qualifying employee or contractor of the U.S. government acting within the scope of employment. Id. § 1605A(a)(2)(A)(ii). These requirements are easily satisfied here. Iran was designated as a state sponsor of terrorism in January 1984 in response to its role in sponsoring several terrorist attacks in Lebanon, including the April 1983 bombing. See Est. of Doe, 808 F. Supp. 2d at 10 (citing Dammarell, 404 F. Supp. 2d at 273). It has remained designated ever since. See Bureau of Counterterrorism, *State Sponsors of Terrorism*, U.S. Dep't of State (Aug. 2, 2024), https://perma.cc/5J54-URPZ. The victims here were two U.S. government employees and one government contractor who were injured while working at the U.S. Embassy at the time of the attack. See Mot. Default J. Ex. 5 at 27, 56, 81. And the claims, brought by their families on behalf of themselves and the decedents' estates, arise from their resulting injuries. The Court may therefore exercise subject matter jurisdiction over the plaintiffs' claims.

C. Satisfactory Evidence

Finally, the Court must determine whether the plaintiffs have provided satisfactory evidence of their claims for the Court to enter a default judgment. "The Court's conclusion that Iran is liable for the embassy bombing does not by itself provide a sufficient basis for entry of default judgment." Bathiard, 2019 WL 3412983, at *4. "Plaintiffs must also provide some proof

7

that they suffered personal injury." Id. To make this showing, the plaintiffs may again "rely upon uncontroverted factual allegations that are supported by affidavits." Id.

Here, each individual plaintiff has submitted an affidavit on behalf of themselves and the estates they represent. See Mot. Default J. Ex. 5. For the direct victims, each affiant attests that the victims experienced "physical and emotional injuries" resulting from the attacks, including, for one, "permanent deafness," and, for another, a "lacerated spleen." Id. at 27, 56, 81. As to the family-member victims, each affiant represents that the plaintiff suffered "extraordinary grief, mental, anguish, and [emotional distress]" as a result of their family members' injuries. Id. at 14–16, 19–20, 28, 33–55, 73–90. And though the family-member plaintiffs are neither U.S. citizens nor government employees, these plaintiffs "may continue to pursue claims under applicable state and/or foreign law." Est. of Doe, 808 F. Supp. 2d at 20. The Court therefore finds that the plaintiffs' affidavits establish each plaintiff's "claim or right to relief by evidence that is satisfactory to the court," 28 U.S.C. § 1608(e), and will grant the plaintiffs' motion for default judgment as to the defendants' liability for their claims.

## IV. Damages

As to the proper measure of damages, the Court will grant the plaintiffs' motion to appoint three special masters. See ECF No. 41. "The courts of the United States may appoint special masters to hear damages claims brought under the state-sponsored terrorism exception to the FSIA." Taylor v. Islamic Republic of Iran, 811 F. Supp. 2d 1, 17–18 (D.D.C. 2011) (quoting 28 U.S.C. § 1605A(e)(1)). Given the number of plaintiffs, the Court finds that appointing special masters in this case would not create unreasonable expense or delay and would help efficiently resolve this action. See Fed. R. Civ. P. 53(a)(3); see also Taylor, 811 F. Supp. 2d at 17 (appointing a special master to assess damages claims in a multiple plaintiff FSIA case).

Moreover, the Court find the candidates proposed highly qualified and will therefore appoint them in a separate order that accompanies this Memorandum Opinion.

## V.   Conclusion

For the foregoing reasons, the Court will grant the plaintiffs' motion to enter a default judgment against the defendants on the issue of liability in a separate Order accompanying this Memorandum Opinion.  The Court will also enter a separate Order appointing the plaintiffs' proposed special masters to make a recommendation to the Court on the issue of damages.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: August 15, 2024