UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ESTATE OF ZOUHAIR EL HALABI,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **THE ISLAMIC REPUBLIC OF IRAN,** *et al.*, <br><br> Defendants. | Case No. 22-cv-3190 (CRC) |

## MEMORANDUM OPINION

In 1983 and 1984, Hezbollah bombed U.S. diplomatic facilities in Beirut, Lebanon, with the support of Iran. The attacks killed and injured several hundred people. Among them were three individuals whose estates and family members make up the twenty-eight plaintiffs in this case.

The Court previously found Defendants, the Islamic Republic of Iran ("Iran") and the Iranian Ministry of Information and Security ("MOIS"), liable for these bombings and appointed three special masters to assess findings of damages for this attack. Now before the Court is Plaintiffs' motion to adopt the special masters' Reports and Recommendations and for entry of final default judgment against Iran and the MOIS, as well as their motion for leave to file a second amended complaint. For the foregoing reasons, the Court will adopt in part the special masters' recommendations as to damages and will enter final default judgment for Plaintiffs. However, the Court will deny the motion for leave to amend the complaint.

I.  **Background**

In the spring of 1983, a man drove a vehicle full of explosives into the entrance of the U.S. Embassy in Beirut, Lebanon.  Corr. Am. Compl. ("CAC"), ECF No. 37-1 ¶ 74.  The ensuing blast killed 63 people and injured more than 100.  Id. ¶ 75.  The following year, a station wagon full of explosives was driven into a temporary embassy facility and exploded, killing at least eleven people and injuring over fifty.  Id. ¶ 81.

Plaintiffs[1] Najem Hassan and Hassan Makki worked at the embassy and were injured in the first blast in 1983.  Report and Recommendation of the Special Master Regarding the Makki Family ("Makki Rep."), ECF No. 50-1 at 4; Report & Recommendations of the Special Master Regarding the Hassan Family ("Hassan Rep."), ECF No. 49 at 2.  Mr. Makki was also injured in the second blast, along with fellow embassy employee, Plaintiff Zouhair El Halabi.  Report & Recommendation of the Special Master Regarding Compensatory Damages for the El Halabi Family Plaintiffs ("El Halabi Rep."), ECF No. 51 at 3; Makki Rep. at 4.  As a result of these attacks, Plaintiffs and their families suffered both physical and emotional injuries.  See CAC ¶¶ 2–9, 31–42, 44–45, 52–54; see also Makki Rep. at 4–9; Hassan Rep. at 2–17; El Halabi Rep. at 3–11.

Plaintiffs allege that Hezbollah, the Lebanese Shi'a militia group, committed these two attacks.  CAC ¶¶ 71, 77, 84.  They further allege that the attacks were financed and logistically supported by Defendants.  CAC ¶¶ 77, 82, 84.

Plaintiffs filed suit against Iran and MOIS in October 2022.  Compl, ECF No. 1 ¶ 1; id. at 24.  They served both Defendants, who failed to respond.  ECF No. 17; ECF No. 19.  The Clerk

---

[1] For ease of reading, the Court will refer to the direct victims as "Plaintiffs" even though they are deceased and their estates as proceeding as representative plaintiffs in the case.

of the Court then entered default, ECF No. 20, and Plaintiffs moved for default judgments as to liability under the FSIA, ECF No. 21.  In August 2024, the Court issued an opinion finding jurisdiction and holding Iran and MOIS liable for the 1983 and 1984 attacks.  Mem. Op., ECF No. 47 at 8.  The Court proceeded to adopt Plaintiffs' administrative plan for the case and appoint three special masters to assess the appropriate damages to be awarded to Plaintiffs.  ECF No. 46 at 1.  Now before the Court is Plaintiffs' motion to adopt the damages findings of the special masters as to the El Halabi, Hassan, and Makki estates and families and enter final default judgment as to these Plaintiffs.  Also before the Court is Plaintiffs' motion in the alternative for leave to file a Second Amended Complaint.

## II. Legal Standards

The Court will set out the appropriate legal standards for Plaintiffs' motions in the relevant portions of its analysis.

## III. Analysis

Because the Court previously established that it has subject matter jurisdiction, determined that the Plaintiffs have causes of action, and found Defendants liable for the two attacks at issue, the Court assesses Plaintiffs' claims for damages only, as well as the El Halabi plaintiffs' motion for leave to amend the complaint.

### A. El Halabi's Motion for Leave to Amend the Complaint

The Court begins with an issue affecting only one Plaintiff, Zouhair El Halabi, and his family: whether the family's claims include a claim for wrongful death.  In their Motion to Adopt the Reports and Recommendations, Plaintiffs request damages for El Halabi's death, which they claim occurred as a result of his bombing-related injuries.  Pl.'s Mot., ECF No. 54 at 2.  However, as Plaintiffs note, the CAC "did not include a claim for wrongful death[.]"  Id.

3

Accordingly, the Court previously found Iran and MOIS liable for El Halabi's injuries, but not his death. Mem. Op., ECF No. 47 at 7–8. Because the claim for wrongful death is not included in the complaint and the Court did not find Iran liable for wrongful death, it denies the request for damages stemming from El Halabi's death.

As a fall back, Plaintiffs move for leave to file a second amended complaint containing the wrongful death allegations. Pl.'s Mot., ECF No. 54 at 2. Under Federal Rule of Civil Procedure 15(a)(2), leave to amend "should be freely given in the absence of undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies, or futility." Richardson v. United States, 193 F.3d 545, 548–49 (D.C. Cir. 1999).

The Court will deny Plaintiffs' motion to amend on futility grounds because the Court is unconvinced that the bombing was a proximate cause of El Halabi's death. To succeed in bringing a wrongful death claim, Plaintiffs must show that "(1) Iran's actions were a substantial factor in the sequence of events that led to [El Halabi's death]; and (2) the [death] was reasonably foreseeable or anticipated as a natural consequence of Iran's actions." Est. of Fakhoury v. Islamic Republic of Iran, No. 21-cv-1218, 2024 WL 4771467, at *10 (D.D.C. Nov. 13, 2024) (internal quotation marks omitted) (citing Owens v. Republic of Sudan, 864 F.3d, 751, 794 (D.C. Cir. 2017)). As a result of the bombing, El Halabi suffered partial deafness. El Halabi Rep. at 3. He died two years later in a car crash, brought on because, allegedly, "he could not hear the car honking" while crossing the street. Id. at 5. It appears that none of El Halabi's relatives were present and that their account of the accident is secondhand. Id. Plaintiffs can show that Iran's actions were a substantial factor leading to the embassy bombings. See Mem. Op., ECF No. 47 at 4. But it is not a natural consequence of a terrorist bombing that El Halabi

would have been killed years later in a car crash—a crash where the driver saw El Halabi and still hit him. See El Halabi Rep. at 5.

Plaintiffs cite to Sheikh v. Republic of Sudan, 485 F. Supp. 3d 255, 269 (D.D.C. 2020), and Opati v. Republic of Sudan, 60 F. Supp. 3d 68, 78 (D.D.C. 2014), in support of their position, but neither is particularly helpful. The courts in both cases gave wrongful death awards where the victims were exposed to HIV and infected at the scene of the attack. Sheikh, 485 F. Supp. 3d at 269; Opati, 60 F. Supp. 3d at 78. But that chain of causation is far less attenuated than a car accident several years after an attack, where another person's actions caused El Halabi's death. Further, Plaintiffs have failed to provide sufficient evidence to establish that the attacks in fact led to El Halabi's death. The special master's report specifies that "each of the 6 surviving family members" attributed El Halabi's death to his inability to hear the car. El Halabi Rep. at 15. But "there is no official record referencing the hearing loss as a contributing factor in Mr. El Halabi's death." Id. at 14. Without a police report, statements from people who witnessed the crash, or further medical evidence, the evidence is insufficient. Therefore, the Court denies Plaintiffs leave to file a Second Amended Complaint and will consider the El Halabi family's award solely on the basis of the injuries El Halabi sustained during the bombing.

B. Damages Standards

The FSIA provides for three forms of compensatory damages: pain and suffering, solatium, and economic damages. 28 U.S.C. § 1605A(c). Direct victims of bombing attacks "who survived an attack may recover damages for their pain and suffering" while "family members can recover solatium for their emotional injury[,] and all plaintiffs can recover punitive damages." Wultz v. Islamic Republic of Iran, 864 F. Supp. 2d 24, 37 (D.D.C. 2012) (citing Valore v. Islamic Republic of Iran, 700 F. Supp. 2d 52, 82–83 (D.D.C. 2010)). To establish

5

damages, plaintiffs "must prove the amount of the damages by a reasonable estimate consistent with th[e] [D.C. Circuit's] application of the American rule on damages." Hill v. Republic of Iraq, 328 F.3d 680, 681 (D.C. Cir. 2003) (quotation marks omitted). "In determining the reasonable estimate, courts may look to expert testimony and prior awards for comparable injury." Braun v. Islamic Republic of Iran, 228 F. Supp. 3d 64, 82 (D.D.C. 2017) (quotation marks omitted). For plaintiffs who are not U.S. citizens, recovery is still available under state tort law. See Est. of Doe v. Islamic Republic of Iran, 808 F. Supp. 2d 1, 20 (D.D.C. 2011); see also Republic of Sudan v. Owens, 194 A.3d 38 (D.C. 2018).

As the Court has previously recognized in assessing damages, "the process of assessing pain and suffering is an imperfect science, as no amount of money can properly compensate a victim and his family for their suffering during and after a terrorist attack." Bathiard v. Islamic Republic of Iran, No. 16-cv-1549, 2020 WL 1975672, at *3 (D.D.C. Apr. 24, 2020) (Cooper, J.); see also Goldstein v. Islamic Republic of Iran, 383 F. Supp. 3d 15, 19 (D.D.C. 2019) (Cooper, J.); Cohen v. Islamic Republic of Iran, 268 F. Supp. 3d 19, 24 (D.D.C. 2017) (Cooper, J.). "In the interest of fairness, however, courts strive to maintain consistency of awards as between the specific plaintiffs and among plaintiffs in comparable situations." Cohen, 268 F. Supp. 3d at 24.

Accordingly, the Court adheres to the $5 million baseline established in Peterson v. Islamic Republic of Iran, 515 F. Supp. 2d 25, 52 (D.D.C. 2007), abrogated on other grounds by Mohammadi v. Islamic Republic of Iran, 782 F. 3d 9 (D.C. Cir. 2015). The Court further relies on the Wamai framework, which was similarly animated by the "need to maintain uniformity" across injuries that "span a broad range" and identified five general categories of physical injuries while reserving the $5 million Peterson baseline for those individuals with the most severe physical injuries. See Wamai v. Republic of Sudan, 60 F. Supp. 3d 84, 91–93 (D.D.C.

6

2014), aff'd in part, vacated in part on other grounds sub nom. Owens v. Republic of Sudan, 864 F.3d 751 (D.C. Cir. 2017), vacated & remanded on other grounds sub nom. Opati v. Republic of Sudan, 590 U.S. 418 (2020), and aff'd on other grounds sub nom. Owens v. Republic of Sudan, 924 F.3d 1256 (D.C. Cir. 2019).

Under Wamai, courts award $1.5 million to plaintiffs who suffer "little physical injury—or none at all—but have claims based on severe emotional injuries" ("Category 1"); $2 million to plaintiffs who suffer "minor injuries (such as lacerations and contusions caused by shrapnel), accompanied by severe emotional injuries" ("Category 2"); $2.5 million to plaintiffs who suffer "physical injuries, such as broken bones, head trauma, some hearing or vision impairment, or impotence" ("Category 3"); $3 million to plaintiffs who endure "injuries [] [that] include[e] spinal injuries not resulting in paralysis, more serious shrapnel injuries, head trauma, or serious hearing impairment" ("Category 4"); and the $5 million baseline to plaintiffs who survive "some mix of serious hearing or vision impairment, many broken bones, severe shrapnel wounds or burns, lengthy hospital stays, serious spinal or head trauma, and permanent injuries" ("Category 5"). 60 F. Supp. 3d at 91–93 (citing Valore, 700 F. Supp. 2d at 84–85). These categories all "assume severe psychological injuries." Schertzman Cohen v. Islamic Republic of Iran, No. 17-cv-1214, 2019 WL 3037868, at *6 (D.D.C. July 11, 2019).

For Category 5 baseline injuries, where victims of the attack received $5 million in compensation, Wamai awarded "$4 million to spouses of injured victims, $2.5 million to parents [and children] of injured victims, and $1.25 million [] to siblings of injured victims." 60 F. Supp. 3d at 94 (citing Peterson, 515 F. Supp. 2d at 51 (D.D.C. 2007)). While solatium awards may be adjusted up or down based on the circumstances, "solatium awards for relatives of victims should be proportionate to the pain-and-suffering awards to the victims themselves." Goldstein,

383 F. Supp. 3d at 22 (citing Cohen, 268 F. Supp. 3d at 26).  Where courts depart from the Category 5 baseline pain and suffering award for direct victims, a proportionate adjustment to their relatives' solatium damages is generally appropriate.  See, e.g., Davis v. Islamic Republic of Iran, 882 F. Supp. 2d 7, 16 (D.D.C. 2012); Bathiard, 2020 WL 1975672, at *5.  As the Court has done previously, it "will scale family member awards based on the servicemember's award: 30% of the baseline awards for plaintiffs whose relatives suffered Category [1] injuries; 40% for Category 2; 50% for Category 3; 60% for Category 4; and the baseline awards for Category 5." Est. of Fishbeck v. Islamic Republic of Iran, No. 18-cv-2248, 2024 WL 4119382, at *11 (D.D.C. Sep. 9, 2024) (Cooper, J.).

Non-citizen plaintiffs (who were not employed by the U.S. government) lack a cause of action under the FSIA.  See 28 U.S.C. § 1605A(c).  In such cases, courts generally "apply District of Columbia law to the claims of any plaintiffs for whom jurisdiction is proper, but who lack a federal cause of action under the FSIA." Cohen v. Islamic Republic of Iran, 238 F. Supp. 3d 71, 86 (D.D.C. 2017) (Cooper, J.) (quoting Wamai, 60 F. Supp. 3d at 89–90).  "Under the FSIA, a solatium claim is indistinguishable from an IIED claim." Valore, 700 F. Supp. 2d at 85. To prove an IIED claim in lieu of an FSIA claim, plaintiffs need to show "(1) extreme and outrageous conduct on the part of the defendant which (2) either intentionally or recklessly (3) causes the plaintiff severe emotional distress." Islar v. Whole Foods Mkt. Grp., Inc., 217 F. Supp. 3d 261, 268 (D.D.C. 2016) (citing Larijani v. Georgetown Univ., 791 A.2d 41, 44 (D.C. 2002)).  Terror attacks are "extreme and outrageous and intended to cause the highest degree of emotional distress." Belkin v. Islamic Republic of Iran, 667 F. Supp. 2d 8, 22 (D.D.C. 2009). Therefore, the Court will award damages for Plaintiffs without a federal cause of action if they can show severe emotional distress.

C.  Pain and Suffering Damages

1.  *The Estate of Najem K. Hassan*

Special Master Stephen Saltzburg proposed an award of $5 million in pain and suffering damages to Plaintiff Najem Hassan. Hassan Rep. at 4. Mr. Hassan was an employee of the Beirut embassy during the 1983 bombing. Id. at 2. Due to the bombing, he suffered "a lacerated spleen, multiple bowel lacerations, and lacerations on his face." Id. at 3. "His liver was collapsing," his "gut was out," and he "was in intensive care." Id. at 11. He was hospitalized for "[m]ore than two and a half months" as a result of the bombing and related injuries. Id. at 3. One of his children noted that "he was not the same person that he was before." Id. at 16. Hassan later described the sensation of the "roof just sitting on his stomach." Id. at 4. The special master recommended a Category 5 award to Hassan on the basis of his "lengthy hospitalization" and severe impacts of the bombing on him. Id. Because Category 5 provides specifically for "lengthy hospital stays," and two and a half months is a lengthy hospital stay, the Court finds that Hassan belongs in Category Five. Wamai, 60 F. Supp. 3d at 92–93. And while Hassan was not a U.S. citizen, he was an embassy employee, allowing him to use the FSIA cause of action for employees. 28 U.S.C. § 1605A(a)(2)(A)(ii)(III); Hassan Rep. at 2. As such, the Court awards the full $5 million Category 5 baseline to Hassan's estate.

2.  *The Estate of Hassan Makki*

Special Master Michael Borden proposed an award of $2 million in pain and suffering damages to Hassan Makki. Makki Rep. at 5. Mr. Makki was an employee of the Beirut embassy and was injured in both the 1983 and 1984 attacks. Id. at 4. His injuries included "injuries to his hand and head . . . evidently from shrapnel[.]" Id. Makki's children recounted seeing him in bed, "bruised" and "bandaged." Id. In later years, Makki recalled "flying through the air after

9

the explosion" and "seeing dead bodies and body parts at the scene." Id. at 4–5. During the 1984 attack, Makki suffered an injury "which resulted in a limp[.]" Id. at 5. In the aftermath of both of these attacks, Makki was "broken," "severely depressed," and "distant[.]" Id. As with Najem Hassan, Makki was a U.S. embassy employee and can seek damages pursuant to the FSIA. 28 U.S.C. § 1605A(a)(2)(A)(ii)(III); Makki Rep. at 4. Under the Wamai framework, plaintiffs with "minor injuries" like "lacerations . . . caused by shrapnel" fall into Category 2 and receive awards of $2 million. Wamai, 60 F. Supp. 3d at 92. Because Makki's injuries map neatly onto Wamai Category 2, the Court agrees with the special master's findings and awards Makki the Category 2 award of $2 million.

### 3. *The Estate of Zouhair El Halabi*

For Zouhair El Halabi, the Court rejects the special master's recommended award of $4 million and instead awards El Halabi a Category 4 award of $3 million. El Halabi was an employee of the Beirut embassy during the attack and suffered "various lacerations and abrasions, hearing loss, and psychological injuries." El Halabi Rep. at 3. His family members suggest that he was "hit by falling debris" during the attack. Id. at 4. The report indicates that El Halabi suffered from "partial permanent deafness" and that he "experienced pain from the injuries . . . until his death." Id. at 3. However, El Halabi was able to return to work within "several days after the attack." Id. at 4. Following the bombing, El Halabi "was more reserved, distant, and unengaged[,]" and his emotional injuries were "severe[.]" Id. These injuries map onto Wamai Category 4. That category includes "those with even more serious injuries, such as . . . serious hearing impairment[.]" Schertzman Cohen, 2019 WL 3037868, at *6 (quoting Wamai, 60 F. Supp. 3d at 92). Courts generally award $3 million to Category 4 plaintiffs, and in this case, the Court believes that this sum is sufficient to compensate El Halabi for the injuries

sustained in the bombing and for the consequences of hearing loss.  See Est. of Fishbeck, 2024 WL 4119382, at *10.  A larger award, as proposed by the special master, appears unwarranted, since El Halabi did not spend months in the hospital or suffer from injuries like multiple broken bones.  See El Halabi Rep. at 3, 22; see also Wamai, 60 F. Supp. 3d at 93.  Accordingly, the Court awards El Halabi $3 million in pain and suffering damages.

    D.  Economic Damages

"Section 1605A explicitly provides that foreign state-sponsors of terrorism are liable to victims for economic losses stemming from injuries or death sustained as a result of the foreign state's conduct."  Thuneibat v. Syrian Arab Republic, 167 F. Supp. 3d 22, 48 (D.D.C. 2016) (citing 28 U.S.C. § 1605A(c)).  "Such damages may be proven by the submission of a forensic economist's expert report."  Roth v. Islamic Republic of Iran, 78 F. Supp. 3d 379, 402 (D.D.C. 2015) (citing Belkin, 667 F. Supp. at 24).  "In considering an award for lost future earnings, the Court shall take account of the reasonableness and foundation of the assumptions relied upon by the expert."  Id. (citing Reed v. Islamic Republic of Iran, 845 F. Supp. 2d 204, 214 (D.D.C. 2012)).

The special masters only proposed economic damages for one Plaintiff, Zouhair El Halabi, which the Court will deny.  See El Halabi Rep. at 13.  Special Master Greenspan proposed $449,934 in economic damages, calculating that El Halabi would have worked until age 54, had he not died.  Id. at 13–14.  But because the Court has not found Iran and MOIS liable for El Halabi's death and because Plaintiffs did not request economic damages between 1984 and 1986 when he was alive but injured, the Court has no basis on which to award economic damages.  See id; see also Mem. Op., ECF No. 47 at 8.

    E.  Solatium Damages

1. *Hassan Family Plaintiffs*

Special Master Saltzburg recommended Category 5 baseline awards for the family members of Najem Hassan. Hassan Rep. at 4. They feared for his life when he was in the hospital. Id. at 7–8. They also recalled that the bombing "flipped upside down" their lives. Id. at 14. All of Hassan's family members recalled similar stories of emotional trauma. Id. at 2–17. Accordingly, the Court is satisfied that Hassan's children and spouse suffered severe emotional injuries as a result of the injuries that Hassan suffered in the bombing and therefore may pursue a claim under D.C. tort law as they are not United States citizens. The Court will award damages as follows:

- Khaled Hassan (child): $2,500,000;
- Khodor Hassan (child): $2,500,000;
- Lamia Hassan (child): $2,500,000;
- Manal Hassan (child): $2,500,000;
- Manja Hassan (child): $2,500,000;
- Mona Hassan (child): $2,500,000;
- Radwan Hassan (child): $2,500,000;
- Rania Hassan (child): $2,500,000;
- Saada Hassan (child): $2,500,000;
- Sabah Hassan (child): $2,500,000;
- Sawsan Hassan (child): $2,500,000; and
- The Estate of Noura Ibrahim (spouse): $4,000,000.

2. *Makki Family*

Special Master Borden recommended Category 2 awards for the Makki family, which the Court will grant. One of Makki's children recalled that the bombing and his father's trauma "left a huge gap in [his] life" while another recounted that they were "constantly living in terror" afterwards. Makki Rep. at 6, 7. As with the Hassan family, every member of the Makki family has demonstrated sufficiently close relationships and emotional injuries to recover under D.C. tort law as non-citizens of the United States. The Court will therefore award the following damages:

- Hussein Makki (child): $1 million;
- Zeina Makki (child): $1 million;
- Ali Hassan Makki (child): $1 million;
- Mirna Makki (child): $1 million; and
- Estate of Samira Ghadar (spouse): $1.6 million.

3. *El Halabi Family*

Every member of the El Halabi Family but one are U.S. citizens and therefore can use the cause of action laid out in 28 U.S.C. § 1605A(c). El Halabi Rep. at 5–25. However, the evidence does not establish that Yessra El Halabi was a citizen. Id. at 8–9. The Court will apply D.C. tort law to her claims.

Special Master Greenspan recommended Category 5 baseline awards for each of the El Halabi family Plaintiffs. Id. at 25. In the aftermath of the bombing, El Halabi's relatives felt "shock and fear." And they report that the bombing had a "severe emotional effect[.]" Id. at 5, 9. Accordingly, Plaintiffs have sufficiently demonstrated emotional distress to recover under the

13

FSIA and D.C. tort law. However, the Court will scale the awards to correspond to the Category 4 ($3 million) award given to Zouhair El Halabi.

For Ferial Harbi, the Court departs upward from the $750,000 award typically given to siblings of Category 4 victims. On the day of the bombing, Harbi was pregnant, and when she "heard the news . . . . she had internal bleeding and suffered a miscarriage." Id. at 11. Courts have awarded upward departures when relatives suffer miscarriages as a result of attack-related trauma. See Ben-Yishai v. Syrian Arab Republic, 642 F. Supp. 3d 110, 132 (D.D.C. 2022); see also Swinney v. Islamic Republic of Iran, No. 20-cv-2316, 2025 WL 1547694, at *15, 24 (D.D.C. May 30, 2025). Therefore, the Court awards Harbi a 20% increased award for a total award of $900,000.

The Court awards damages as follows:

- Estate of Yessra El Halabi (mother): $1.5 million;
- Sadica Allouche (sibling): $750,000;
- Hoda Ammar (sibling): $750,000;
- Rima Bouchaaya (sibling): $750,000;
- Billal El Halabi (sibling): $750,000;
- Marwan El Halabi (sibling): $750,000;
- Mohamad El Halabi (sibling): $750,000; and
- Ferial Harbi (sibling): $900,000.

F. Interest

One of the special masters proposed an award of prejudgment interest in this case, in the event that the Court decided to award economic damages to El Halabi. El Halabi Rep. at 26. Since the Court will not award economic damages to El Halabi, it will also deny an award of

prejudgment interest. As the Court has observed, "prejudgment interest is not appropriate for nonpecuniary damages already designed to provide complete compensation." Goldstein, 383 F. Supp. 3d at 24. However, the Court will award post-judgment interest under the federal post-judgment interest statute. See 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court.").

### G. Conclusion

For the foregoing reasons, the Court will grant in part and deny in part Plaintiffs' Motion to Adopt Reports and Recommendations and for Entry of Final Default Judgment. A separate order accompanies this Memorandum Opinion.

_____  
CHRISTOPHER R. COOPER  
United States District Judge

DATE: November 7, 2025